Our next case is 412-0048, Brazen v. Illinois Municipal Retirement Fund. For the appellant is Mr. Fahy and Mr. Baker. Are you both arguing? That's just me. I'm Mr. Fahy. Mr. Fahy. Okay. Beth Janicki Clark. Okay, Mr. Fahy, you may proceed. Thank you. I have to reserve time for a vote. Yes. May it please the court. Counsel. This case comes before you today on a matter of administrative review. Our client, Joseph Brazen, is a former employee of the city of Baruch. The IMRF has concluded that Mr. Brazen has violated the early retirement incentive provisions under the Illinois Pension Code and that therefore he should forfeit those benefits because he purportedly, at least as far as the IMRF is concerned, formed a corporation solely to circumvent or as a guise to circumvent the early retirement return to work provisions. Now at its heart, this case is essentially and primarily a matter for statutory interpretation. And because of that, the statute, the standard overview is de novo as it pertains to questions of law. Now, there are essentially two passages at issue. And those two passages and what the plain language is and how they interact is what this court is going to be called upon to interpret as to the merits and quite frankly, how the IMRF is going to operate going forward into the future. Now, the first provision under Article 7 is 141.1G and that is the early retirement incentive provision. Now, I tried to do this from memory and I simply can't, so I'm going to read it so we can be very specific about what it says because in this particular case, the devil is in the details. Now, it states again under G, an annuitant who has received any age enhancement or creditable service under this section and thereafter accepts employment with or enters into a personal services contract with an employer under this article, thereby forfeits that age enhancement and creditable service. So what did the IMRF find when it made its determination that he was going to forfeit his early retirement benefits? Well, first of all, they didn't find he was an employee. And I quote specifically, the ability of the board to determine whether or not Mr. Prezen is an employee is irrelevant to this proceeding because no such determination is being made. So then you would probably say, oh, okay, well, fine. They still have another bullet in the chamber, personal services contract. They didn't make that determination either. In fact, in the response in the common law record of Volume 1C133, they state no determination was made that this was a personal services contract. So at this point, and as you might imagine during the administrative review process, I'm asking myself, no employment with, no personal services contract, how in the heck are they making this determination? Well, in their initial letter, they said you have a continuing relationship with the municipality. I didn't find that in the statute anywhere. And so then how do they rule eventually? They make this conclusion, and this is, quote, under the facts of this appeal, Mr. Prezen violated the provisions of Section 7141G because ECL, that's Electrical Consultants Limited, was created as a guise to avoid the return to work prohibitions contained therein. More specifically, comma, Mr. Prezen's actions are contrary to the intent of the return to work prohibitions. So they found that Mr. Prezen violated the spirit and intent of the return to work provisions, and therefore, he must forfeit his early retirement benefits. What brought this on 12 years after he retired? Boy, I wish I knew. Because without, I mean, I want to focus on the legal arguments, but to address your question, he had sent three letters through his personal attorney. And let me clear that up for the record. The city attorney, it says in their brief that it wasn't actually Mr. Prezen's attorney. I know one city attorney who has no other clients, and that's Mark Cohen works for the City of Springfield. Every city attorney I know practices law with other clients. So he went to his attorney and said, hey, this was in 1998, 2002, and there's a third one in there. He said, is my client's conduct consistent with the early retirement incentives? And they said, no, it's fine, it's fine. And then in the very last letter, they say, as long as it's not a guise. Is it undisputed that IMRF agrees that they responded in those ways? It's undisputed because in the record there's actually three letters. Back from IMRF? No letters from IMRF, from the attorney memorializing his conversations with IMRF. To his client. To his client. And again, just in case you're thinking about this going there, the government can't be a stop. So even if they had issued these letters themselves, so what? They can come back at a later date, as they did some 12 years later, after the company's been dissolved, and say, you know what, we've taken a second look at that, we think it was a scam. So you might ask yourself, well, how did they make this determination, and where did this authority come from? Well, IMRF says, we clearly have the authority, and it's under section 200 of article 7. And that's the general empowerment provision, the legislative grant of authority to administrate the Illinois Municipal Retirement Fund. And in that section, which again, I'm just going to state as opposed to trying to recall it from memory, the applicable part states, to carry on generally any other reasonable activities, including without limitation, the making of administrative determinations on participation and coverage, comma, which are necessary for carrying out the intent of this fund in accordance with the provisions of this article. So they have this power to make administrative decisions, as long as they're in accordance with the provisions of this article. Well, they say the provisions of the article violates the spirit and intent. I say the provisions of the article clearly state you either have to have an employment with, or a personal services contract with. Now just in case you think I'm going smug, I'm not going to give you the waterfront on statutory interpretation, but I'm going to give you ones that are specifically applicable to this case, particularly as they pertain to pension benefits and penalty provisions. And again, you guys, collectively, have made these decisions. Number one, pension statutes ought to be liberally construed in favor of the pensioner. Jones v. Board of Trustees, this court. Penalty provisions must be construed strictly. That's Yasmin v. Certified Grocers, Illinois Supreme Court decision. Where there exists a general statutory provision and a specific statutory provision, either in the same or in another act that both relate to the same subject, the specific provision must control and should be applied. In this case, we're saying 141 is the specific provision, not the general grant of powers in Section 200. Plus, it is well known that the delegations employed by a state legislature are grounded in statute, not in common law. And therefore, those powers they grant have to be strictly construed. I mean, this is administrative law. They're administratively created entities by the legislature. They are limited in their powers. And last but not least, when the legislature expressly holds one thing or mode in action in a statute, it excludes all other things not expressly prohibited therein. So let's try and figure out how, if you have to liberally construe in favor of my client, the pensioner, and you have to strictly construe this penalty provision against IMRF, how did they come up with the fact that they can create a third exception to forfeit your pension? It's clear what the statute says. Are you getting unemployment with? No. Of course you're getting unemployment with. He didn't get W-2s. I mean, there was no attributes of employment. Did he have a personal services contract? No, because the city contracted with a corporation where Jill Prezen didn't have to do anything literally. He could have hired someone else. He could have died on the job. There was nothing in the contract requiring him personally to do it. The corporation was out. Not him. So isn't this a legislative matter? Couldn't the legislature amend the statute so that they could include this type of a situation? I presume that you're just heading me off, and thank you for that. Yes, they have a remedy. It ain't here. It's over there. Several reasons for that. First of all, how the heck are they going to apply this newfound rule, which apparently they don't have the authority to do? They have placed upon themselves this authority to say, you know what, even though you're not in one of those two categories, we have this inherent power to go beyond that when we think you're violating the spirit and intent. And in this particular case, they think my client violated the spirit and intent because he formed a corporation, and the corporation contracted with the city of Peru to do, again, not his exact same job, but some of the things he previously did when he worked for the city. Now, this leads into two other arguments, which we included in our brief, that I do need to touch upon, and that is, first of all, the case of WERGO versus the State University Retirement System. Again, a fourth district case. Now, the IMRF says that case simply doesn't apply, and that they try and distinguish it. Now, the board in WERGO was called upon to determine the continuing eligibility of a former employee to participate in the State University Retirement System. And in this particular case, the board was called upon to determine the continuing eligibility of a former employee to participate in the other retirement system. I don't know how those two are all that far distinguishable. They said, well, one's Article 15, one's Article 7. Yeah, they're both pension provisions. And what did this court say the key question was? Not that there was the term employee or anything else defined in the act. They said the key provision was, according to this court, whether the board had been granted the power to determine whether a person was in fact an employee, or whether that determination was left up to the participating entity. Now, we argued this case in administrative review and also directly to the board, and they simply don't think that WERGO covers it. And they're of the opinion that even if WERGO was applicable, because, again, in this case, you've got to remember, there isn't a specific provision, a legislative authority saying, you guys, IMRF, you get to make the determination as to who an employee is, or, no, I'm sorry, who has an employment with, or who has a personal services contract with. There's no provision that grants them that authority. It doesn't matter. We have Section 200, the super paragraph. And the super paragraph grants us whatever powers are necessary to enforce the intent of this act. So somehow we escape WERGO. And without us looking over these counties, this was never going to work. They're just going to scam us. Well, as we cite the case of, and, again, it's an administrative case, Tina Stamm decision, which was a decision made by IMRF, this was an employee who previously worked for a participating municipal entity. They then were hired by the Juvenile Detention Center under a juvenile justice grant, which most of you are pretty well versed with. And she was supposed to be, in essence, working as a grant. But what happened is the county of Peoria actually gave her her paycheck. They gave her her W-2. And the employee entity made the determination as to whether she was an employee or had a personal services contract. So, therefore, the IMRF concluded, guess what, you lose your ERI benefits because there was an employment with. So it obviously does work, but instead they feel necessary to say we need these police powers because they're just going to try and get over on us and keep hiring back people by new ingenious ways. Now, is there a hole that the IMRF needs to be concerned about? Oh, heck yeah. There's a big loophole that someone could walk through. And they could, if they wanted to, I think with the laws it is today, purposely create a corporation and do what my client did, which was more of a hacking stance and not some particular plan, but they remedy it across the street, not on the back of a single annuitant after they take all his money away. How could this guy, who sought legal advice on three occasions, who's not an attorney, somehow decide, well, you know what, I don't have employment with, I don't have a personal services contract with, I've sought legal advice, yeah, but I somehow think that I violate the spirit and intent, and I put myself at risk to lose all my money 12 years from today. And that's the entire problem with this attempt to somehow impose this administrative regulation, which didn't even bring me to my most troubling aspect. Sorry, I keep thinking the lights are going to go out. And that is piercing the corporate veil. There is a scene in The Wizard of Oz where the great Oz is behind a curtain, flashing levers and shouting out loud into the machine, and then he says, ignore the man behind the curtain. Well, their argument on piercing the corporate veil is an alias to that. They keep saying, we're not piercing the corporate veil. Piercing the corporate veil typically involves when you're punishing the individual for bad acts of the corporation. We're not doing that. We're just completely disregarding the legal entity. It's based on someone who wants to pierce the corporate veil. And things they take into account would be, do they follow corporate formalities? What is the record show in this case? They had annual meetings, annual meeting minutes. Did they co-mingle funds? What was the record show in this case? No, they didn't. The corporation had its own bank account. The corporation paid taxes. The corporation paid him on a quarterly basis. The corporation was allowed to be legally accepted and recognized under Illinois law. Was it a C-corp? Do you know where it is? That's all right. If you don't know and the record doesn't show, it doesn't matter. I do not know, and I apologize. There is one question that I didn't know. Whatever the case was, the bottom line is, and call it not, piercing the corporate veil, and say that there is literally just a contract between Joe Crazen and the city. How are they doing that? Especially because the contract is in the record. He had no personal obligations whatsoever to perform any of those services. I mean, literally, it comes down to, if you are working in your shop and you have a nail, you don't have a hammer, you start looking around and you think, what can I use to hammer this in? That's what it seemed like it became. That leads us to the very last argument as to whether their decision was against the manifest way of the evidence. Now,  I fully realize that anytime you say against the manifest way of the evidence, there is which just ticked me off because there is no recording of these IMRF proceedings. So you are forced to just dump information on them with the hope that somehow when they are making their interpretation and their factual conclusions, that you can actually have it in the record as a part of your whole argument. Now, let's talk about the timing of the incorporation of the contract with the city. That's really the gravamen of their case. According to them, this was a plan in a scan. He was going to retire, he formed a corporation right away, and he entered into a contract with the city and that him and the mayor got into cahoots. And that they did this completely so they could circumvent their return to work provisions in the early retirement. Now, in the record also is that him and the mayor had been working for three or four years prior to that with PDLT, he was handling the electric car, but I don't remember what the full name was. And that they continued working after that. Why did he incorporate? Well, because he was retiring and he was going to do this business full time. Why did he get hired? Well, because they had been trying to actually find someone to take his place for six months to a year prior to that and couldn't find anyone. And so they entered into a contract with him as a stopgap measure. And the stopgap measure is if you can't find someone else, you're gone. Now, it sounds ridiculous in hindsight, which is how IMRF is building their case, because that stopgap was in place for eight successive terms. And why was that in place for eight successive terms? Because it benefited the city. It was a flat rate, no benefits, at the end of the day it was cost savings. And quite frankly, this corporation, it was an open market. And in fact, even as we sit here today, and this brings us to the dissolution, Joel's an elderly guy, he's done. He doesn't want to sell his company, he doesn't want to have anything to do with it, he quits. A new mayor is elected. A new mayor submits an affidavit, look, the dissolution or our stopping working with them had nothing to do with that or me taking over. Unless, if you look at it in hindsight from 12 years back, this looks like someone was just getting together as a scam, that somehow we purposefully created it. You must have been one heck of a lawyer, that city attorney, to sit there and go through all of this and come up with that conclusion and say, wait, I've got a way to beat it. Are you kidding me? Who? First of all, who would ethically do that? Second of all, it's a malpractice claim coming back against you. This also brings us to the de minimis nature of the corporation's other sources of income. Another thing that really disturbs me on this case, is when you did no other work outside. So we provide a representative sample of people who he did work for and the higher-up says, oh look, they only did $4,000 worth of business with other people. That's not really doing business with anybody else. It's not doing business for anyone else. You ask for proof that this corporation did work for other people and we provided it to you. If you want more, ask for it. Don't play gotcha and say, oh, they've only submitted this much therefore it doesn't count. They treated the third letter from the attorney to his client, and again, as an attorney  as advice on how to break the law or how to circumvent the law. But their plan of this was a guise. Really? That's what we're relying on? Sorry. Thank you. Thank you, Counselor. We have an opportunity to address this again in rebuttal. Ms. Clark? Good morning, Justice. Counselors, may it please the Court. Counsel? Janneke Clark on behalf of the IMRF. I see this case as actually involving three issues. The first issue is, did the IMRF have the ability to interpret the ERI forfeiture provision contained in 7-141G of the Pension Code? Was that interpretation of that ERI forfeiture provision correct? And in keeping with the legislative intent of the ERI provisions contained in the Pension Code? And third, the question regarding the manifest weight of the evidence was IMRF's decision against the manifest weight of the evidence? And I think it's clear that IMRF does have the authority to interpret 7-141G of the Pension Code. You must keep in mind that 7-141G is part of a whole larger section dealing with early retirement. It talks about why it was enacted, what you have to do to pass an early retirement resolution. And then finally it says, and you know what, you're going to forfeit your enhancements that you get under this section. You know, you've retired with age enhancements and creditable service enhancements. Therefore, you retire at a higher rate. That's a personal services contract that you shouldn't get the benefit of that higher pension. It's a forfeiture provision. That's another very important point to note about this. It says if the annuitant goes back to work as an employee or enters into a personal service contract. That's correct. And in this case, you have a corporate entity that's a legally recognized entity in the state of Illinois. That's correct. Well, you know what, we're going to look at the ERI statute as a whole. And if you look at the ERI statute, subsection A of that statute is very detailed and provides the intent behind why that statute was enacted. It was enacted as a financial incentive or as a cost-saving measure for municipalities who were struggling financially. The intent behind it was for higher paid employees like Mr. Crazen, to increase his service time and age time. If he wasn't 55 and wasn't old enough to retire, he could purchase some years which would enable him to retire. And what happens then is his retirement pension would go up. And in this case it went up I believe 10% a month, about $1,300 a month. Had he not taken his ERI incentive at the time, he would have retired and his pension would have gone up. So what IMRF did was look at the entire statute. If you look at the Taddeo case and the Reaver case that have been decided by the Illinois Supreme Court which deal directly with IMRF. And in those cases they also involved a forfeiture provision. That was the felony forfeiture provision which says if you commit a job-related felony, you forfeit your entire right to a pension. IMRF in those cases actually had the other side to this case and was trying to argue that the forfeiture provision has to be strictly construed in accordance with the statutory language of that section. But the Illinois Supreme Court in Taddeo and Reaver said, you know what, you can't look at this strictly. You've got to look at the entire intent behind what IMRF did. The IMRF has authority to do what it did. You don't have any language in 7141.1G authorizing the guise provision or anything else. So what you're arguing essentially to us is this is what the legislature intended even though they didn't say it. The legislature did say it. They said in subsection A this is a cost-saving measure to help municipalities during tough financial times to enable highly paid employees to retire at a higher rate of pension and not return to work. It even says that in there. We recommend that you take five years before you return to work for a participating municipality. We also recommend that if you're going to hire any replacement employees that you hire them at a rate of less than 80% of what you were paying the person who retired. The forfeiture language in 7141.1G doesn't include any of that. But that is part of section 7141 as a whole. It's 7141.1A. It's subsection A of that section dealing with the retirement. If you enter into a contract with a closely held corporation to provide services is it an economic benefit to the city if they pay for that contract but they don't have to pay any benefits? That is an economic benefit. And they don't have any liability? I would think that they limit their liability. I would think that could be an incentive. Doesn't that fit within the spirit of the act? The city is also paying for the higher pension that he retired under. Mr. Prezen retired under a higher rate of pension. But they're paying less for the same amount of services which may be... What's the difference between that and hiring somebody at 80% of what he was making when he retired? I think in this case it's different because if you look at the facts of this case it's clear. I'm talking about the intent of it. You wanted to talk about the intent of it being a cost saving provision. If the city says this saves us money and we get superior service why are we being... The city never said that in this case. No, I understand. And if you look at the facts, Your Honor, under the contract the 10 year period that Mr. Prezen worked as a corporation in his old job with the city of Peru, the total amount paid to him by the city or paid to the ECL, his company, was a little over a million dollars over a 10 year period. During that same 10 year period in pension payments he collected $668,000. In this case IMRF is saying not that you don't get any pension. He worked. He worked for a municipality. He was a long-term employee. He's entitled to his pension. We're just saying you're not entitled to the ERI enhancements. If he had retired and formed a closely held corporation with family members and the primary family member of the closely held corporation was the son who was president of the closely held corporation. And the son did the majority of the work with the city but not all. But the father continued to work in the closely held corporation and received benefits as well as salary from the closely held corporation with the same principle applied because he would be benefiting by the relationship between the closely held corporation and the city but not only would he not be city employee, he would be an employee of a separate entity and working under a son who might have 51% of the business but he would still be hugely benefited. His family and extended family would be hugely benefited from providing the service. So what would you give in? An annuitant returns to employment with or a personal service contract. And in this case, Mr. Prezen retired. He retired on the 31st of January. The very next day he went back to work. Why even bother creating the corporation if the sole purpose is to put him back at his old job as a full-time employee for the city of Peru when he could have simply just not retired? There's been no evidence presented by anyone here that this contract with the corporation, with the city, saved the city of Peru any money at all. What about Mr. Fay's argument that the specific finding was we don't have to decide whether he's an employee? The statute doesn't say employee. The statute says employment with. And it doesn't define that and it doesn't define personal services contract. So could the statute say personal services contract means a contract with a corporation that calls for the services of a person? Maybe they did mean that. We don't know because it's not defined. So when something's not defined and it's ambiguous as it is in the statute, you look to the entire statute as a whole. Personal services contract with an employer doesn't sound ambiguous to me. What's ambiguous? It's not defined in the statute. Because if the annuitant enters into a personal services contract or if the annuitant enters into employment so it's a person, the annuitant. That's correct. And in this case the annuitant formed a corporation so that he could go back to work. And that's the only reason he formed that corporation. That's why, you know, within a 14-day period, Mr. Preysen, you know, created a corporation. A few days later there was a contract with the city. A few days later he retired and then the very next day he's back to work as an employee of that corporation. It's not like I don't understand your argument. I do. Right. Because if you look at it, you take everything else away, he's still in the same job, he's back to work. Right. But is that our problem? When the legislature, what Mr. Fey is saying, the legislature said two things. If you're an employee with the same employer or you enter into a personal service contract, you lose your benefits. They didn't say if you're an employee of a corporation who enters into a personal service contract, you lose your benefits, your extra benefits. In other words, the legislature could have cured this. They don't have that language in there. They gave two ways you would lose. He doesn't qualify for either one of those ways. Well, I think the legislature can't possibly think of every scenario that someone could do to try to avoid the forfeiture provisions of the ERI statute. But I think in this case, it's clear that they could not have intended someone to be receiving an enhanced benefit, yet at the same time returning to work at the same job that they retired from and collecting payment under that contract. Well, what you just said seems to me that that could have been put in the statute just like that. Your Honor, the legislature said that. You know, hey, you can't go back to work at the same job, whether you're personal services, whether you're an employee or what you're doing. You know, legislation can always be made more clear. They could have put that in there specifically. But I think because it's not clear... But you think the Board has the authority to add that to the statute? I think the Board has the authority to interpret the statute along in keeping with the intent of the General Assembly that's clear within the statute and in keeping with the Tatio and in keeping with the intent of the General Assembly that is clearly expressed. And in this case it is. We have subsection A. Its object and purposes are clearly set forth and a literal interpretation of a particular clause would defeat the obvious intent. How does that trump what we learned the first semester in law school and what the United States Supreme Court has reiterated in a campaign financing case? Corporations are real. They're real. It's a genuine legal entity that almost has or does have personhood in respect to the law in many instances. Yet the  well, we're not piercing the corporate veil. We're not fooling around with that. We're not saying it wasn't a legitimate close-to-home corporation, some chapter S or whatever. It's just that we're, we don't like it. We don't like the amount of money that was spent out, that it cost, and we don't like the continued relationship. So, it smells bad, it looks bad. Mr. Fay would say, well, yeah, but it's a giant hole through which annuitants could drive. It is a giant hole. But I think all three of us have already asked in one way or another, if it's that big a hole, doesn't the legislature need to do something about it? I mean, you're not losing any points by saying yes. Would I say yes? Yes, I would. And so would the IMRF board. We really believe that what was done here was right. Aren't you facing the corporate veil in this case, without saying so? I don't think so. What if there were $400,000 worth of business by ECL and in fact there were 14 employees or 8 people who will say, here's what I want to do and can I still retire under ERI and do this, go to work for my wife and then go back to work for the school district? Whatever. I get these questions all the time. The way I typically answer those is if it's a legitimate corporation, it functions outside of working with the entity that you just retired from and it existed before you made your intent clear under ERI that you were going to take those provisions, the chances are it's probably okay. I've always said this case is very fact specific. It's because of the way that it all went down. What took 12 years for IMRF? Well, IMRF doesn't have, right now we do have auditors. We started an audit program in 2008, but the auditors aren't what uncovered this situation. What uncovered this situation is we received a phone call from a whistleblower, someone who had attended an IMRF meeting regarding early retirement where it was, you know, discussion was had about can you go back to work and our field rep made a statement, no you can't, well then, you know, what about so and so? And that's how this all started. But you don't dispute that his attorney contacted IMRF three times? There are in the record three letters from Doug Schweikert, who's the city attorney and apparently also Mr. Prezen's attorney, that say, I talked to Julie, one of them said I believe was right around the time the corporation was created and there was another one in the interim and the last one came about 2002, 2003. The problem I have with those letters is, as I said before, we get calls all the time from people who are retirees and say, tell me is this okay? We have an 800 number. People call it all the time. They talk to our 800 customer reps. Customer reps give them answers. Does that mean they gave us all of the facts when they asked the question? No. That's why now in my job, and I'm relatively new at this, I've only been at IMRF for a little over a year, but what I've done when I get these questions is say, I'm not going to answer them. Although I have no evidence of what was provided to IMRF. If IMRF gets these calls all the time, why don't you go back to the legislature and have them fix it? Well, if this case goes against the way IMRF would like for it to go, then it's probably going to be a legislative suggestion that we do have to go back to the legislature. When was this statute enacted? I'm sorry, where? When. When? Well, it was enacted, I believe, in the late 90s, but originally it did not apply to municipalities. There was an amendment that applied to municipalities that happened in 1998. So, in summary, I think we've covered pretty much everything. I believe the statute has the authority, because this is a forfeiture provision, it would be absurd to say that there could exist a forfeiture provision that says you forfeit your ERI enhancements yet not provide the entity that's in charge of those enhancements or those pension payments the ability to forfeit that. It would make no sense. The statute would be rendered meaningless. Aside from that fact, there's also another forfeiture provision in Article 7, that's Section 7 to 19, I believe, which is the felony forfeiture provision. The felony forfeiture provision that says if you commit a job-related felony, you give up your IMRF pension. Nowhere in that section does it say that the Board has the ability to interpret this. IMRF Board gets cases all the time where they make an interpretation regarding the facts of a specific felony and whether or not it was job-related. But the language felony and how forfeiture because of felony appears in the statute. So it's a question of what is the language that appears in the statute mean? We don't have any language appearing in the forfeiture provision at issue here in paragraph G to interpret. You've just made it up. I think we can interpret what employment within personal services contract means. As I stated before, I think it's a vague, it's ambiguous. What personal employment contract means? Personal services contract. What could that mean? Could it mean a contract with a corporation that was created solely for the purpose of avoiding the statute to reemploy an individual in his position that he left the day before? Employment here means something different than employment or employee for workman's comp purposes. It says employment with, and it's not defined. Employee is defined in the IMRF statute, but employment with is not. That's why in the findings of conclusions, the IMRF board stated we are not making a finding that anyone here is an employee. So aside from the forfeiture provisions becoming meaningless, if this court has defined that there's no ability of IMRF to interpret them, there's also section 7200. Section 7200 states, and Mr. Fahy provided you with the language of that section, but it basically says that the IMRF board can make decisions on participation and coverage which are necessary for carrying out the intent of the fund in accordance with the provisions of this article. If the General Assembly when they enacted that general provision giving IMRF authority intended that IMRF should not have the authority to interpret any forfeiture provisions or 7-141.1G, wouldn't they have said except 7-141G? You can interpret the provisions of this article except 7-141G. Thank you, Counselor. Your time is up. Thank you. Okay. Mr. Fahy, any rebuttal, sir? If I bring you more paper, I'll keep this brief. Okay. Okay. You caught on to this and you said they've been taking phone calls for years on this. Okay. And you've heard two or three different articulations of what they think the rule should be as it pertains to corporations. And in fact they provide, they opine to their annuitants on what they think is good and what they don't think is good. And yet here we are at least 12 years later and they haven't come up with a rule yet? Instead, it's a little easier if you just come back afterwards and look back down the barrel and say, okay, now I think you did something wrong. Again, they're not bound by their opinions anyhow. Why don't they amend it? When's the last time they amended it? Well, let me see. Section 141.1 G was amended by Public Act 96-775 and then here, effective 826-11. That seems pretty recent. I don't think they could amend it. I think they know this problem is out there. We are not contesting IMREP's ability to interpret Article 7. We are not contesting IMREP's ability to interpret 141.G. What we're contesting is their ability to interpret it to create brand new forfeiture provisions. What we're doing is we're contesting their ability to interpret that to empower themselves with equitable powers to look right past the corporation and say, you know what, forget the corporation, it's really this guy. You can't interpret, because you're an entity of limited legislative powers, well beyond what your specific statutory empowerment is. Now, two last arguments. You know, don't be fooled by the argument that somehow the city was paying this guy more and coming out short on the deal. I mean, you actually heard IMREP's counsel say, there's been no evidence presented to show whether the city came out ahead or behind. I agree. This is one more of those things that really disturbs me about this case. They simply concluded it based on no evidence, that somehow he was getting a sweetheart deal. Look, there's no evidence in the record to support any of that. They throw out big numbers at you, say, what about the felony forfeiture cases, counsel said. There is a specific provision in the IMREP statute that says if you commit a felony, you lose your benefits. The guy committed a felony. He loses his benefits. Talk about a plain and simple interpretation of the law, and that's where we start on statutory issues. They said, look, this is what the statute says, this is pretty straightforward. He committed a felony, he loses it. That's got to be job related. That leaves open interpretation, which again, they could then grab on to 200, and they grabbed on to 200 to their credit the other way. The Supreme Court said, well, we don't think it's related. The Supreme Court said it is, but again, we're talking about the court can make those determinations, exercise equitable powers and go beyond this, but they're not the court. They're a legislative credit enemy with limited powers. And I've been taught that when you think you're winning, sit down and shut up. Thank you very much. Okay, counsel, thank you. We'll take this matter under advisement and be in recess for a few months.